The TRAVELERS INDEMNITY COMPANY and The Travelers Insurance Company, Plaintiffs-Appellees,

v.

Harold NIX, Defendant,

Harold Leon Pettyjohn, Defendant-Appellant.

No. 80–9060

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Unit B

May 14, 1981.

James H. Whitmer, Gainesville, Ga., for defendant-appellant.

Freeman & Hawkins, Michael J. Goldman, Atlanta, Ga., for plaintiffs-appellees.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

PER CURIAM:

This action was initiated by The Travelers Insurance Company and The Travelers Indemnity (The Travelers) by the filing of a declaratory judgment action in the United States District Court for the Northern District of Georgia, seeking to determine their rights and responsibilities under a policy of liability insurance. After discovery, The Travelers moved pursuant to Rule 56, Federal Rules of Civil Procedure, for summary judgment upon the grounds that the pleadings and the supporting evidence showed that there was no genuine issue of material fact and that The Travelers was entitled to a judgment as a matter of law and also entitled to a declaration that no coverage existed under the policy for the event in question. The district court granted the summary judgment and this appeal is prosecuted by Harold Leon Pettyjohn.

The policy of insurance in question named "Harold Nix Gulf Station, Harold Nix, d/b/a," as the insured. The controversy concerning coverage arose as a result of the shooting of Pettyjohn by Nix.[1] The shooting occurred on the premises of the Harold Nix Service Station and Convenience Grocery Store. After Pettyjohn sued Nix in the Georgia State court for damages arising out of the shooting incident, The Travelers filed this declaratory judgment action. The record reflects that in July 1978 Nix was operating a service station in the Gainesville, Georgia, area. Nix sold petroleum products and also main-

---

1. Harold Nix did not appeal from the ruling of the district court.

tained a convenience grocery store on the premises. Nix and Pettyjohn were acquaintances. Pettyjohn was also acquainted with Nix's son, Curtis. On the date of the shooting in question Pettyjohn stopped at the Nix station in order to purchase some grocery items. Sometime later the same day Pettyjohn returned to the station intending to obtain the assistance of Nix in changing the oil in his vehicle. When Pettyjohn arrived the second time at the station, he heard Mrs. Nix inquiring for the son, Curtis. Pettyjohn advised that he had seen the son walking up the highway approximately three quarters of a mile from the store. Mr. Nix requested that Pettyjohn drive him to locate Curtis. After locating Curtis, some altercation occurred between Nix and his son. Pettyjohn assisted in talking to Curtis and in having him agree to return with his father to the service station-grocery store. Pettyjohn then drove Nix and Curtis back to the store and Pettyjohn went inside the store with Nix and Curtis. When they got inside, another altercation occurred between Nix and his son, Curtis. Pettyjohn intervened by asking Nix not to beat his son any further. Some argument occurred between Nix and Pettyjohn and Nix then reached under the counter, drew a .38 caliber revolver, and as Pettyjohn was running from the store, fired twice in his direction. The second bullet struck Pettyjohn in the leg.

Pettyjohn's testimony by deposition reflected that his sole reason for returning to the store and going inside the grocery sales area was to try to prevent Mr. Nix from beating Curtis. Pettyjohn testified that he was attempting to be conciliatory and a peacemaker and that his only reason for interceding in the altercation between Nix and his son was that purpose. On this point, Nix testified by deposition that Pettyjohn was doing nothing at the store which was connected with Nix's business. Nix further testified that after they returned to the store Pettyjohn jumped on him and started to beat him in the head and pin him down over the counter, that Mr. Nix ordered Pettyjohn off the premises and that when Nix freed himself of Pettyjohn's hold he ran behind the counter and obtained his

pistol and fired two shots in the direction of Pettyjohn, the second of which struck Pettyjohn in the leg.

There is no question but that the shooting incident arose out of a purely personal transaction and had nothing to do with the operation of the station or grocery or any business connected therewith.

The policy of insurance in question provides for liability coverage in connection with the conduct of the insured's business. Pettyjohn's claim is that the subject policy provides liability insurance for Nix for this shooting event. The only issue presented by this appeal is whether the trial judge properly concluded that the subject policy provided coverage only for business-related liability, and that there is no coverage for the above-described event because the liability of the insured, if any, did not arise out of the conduct of his business. The policy is what is commonly referred to as a "special business" policy which provides coverage for liabilities arising out of the operation of "the business." According to the declaration sheet appearing as the first page of the policy, such business is a "gas station and grocery store." The policy provides:

C. PERSONS INSURED.

1. Coverages [comprehensive general liability]—Each of the following is an *insured* to the extent set forth below: (a) if the *Named Insured* is designated in the GENERAL DECLARATIONS as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor and the spouse of the *Named Insured* with respect to the conduct of such a business;

The named insured under the policy in question is Harold Nix, d/b/a Harold Nix Service Station. Under this "special business policy," he is an insured under the policy only with respect to the conduct of his business.

"The obligation of a liability insurer . . . is determined by the terms of the policy. The intention of the parties as to the coverage of a policy is determined by reference to the words which they have used . . .

The terms of the policies are construed in their plain, ordinary and popular sense." Appleman, *Insurance Law and Practice*, Vol. 6d, § 4254, pp. 24–25.

Under the "definitions" portion of the policy in question, *"business operations* means the ownership, maintenance or use of the premises for garage operations and other commercial purposes and all operations necessary are incidental thereto." There is no question in this case but that the business of Harold Nix was the operation of a service station and convenience grocery store. Accordingly,

> [t]he parties are presumed to have in contemplation the nature and character of the business, and to have foreseen the usual course and manner of conducting it. Thus, in construing a policy of insurance so as to arrive at the true intention of the parties, the ordinary legal and literal meaning of the words must be given effect where it is possible to do so without destroying the substantial purpose and effect of the contract. *Liverpool & London & Globe Ins. Co. v. Georgia Auto & Supply Co.*, 29 Ga.App. 334, 347–48, 115 S.E. 138.

It is quite apparent to us that the parties in contracting for this insurance policy did not contemplate anything other than what the policy plainly intends: coverage for liability arising out of the conduct of the business, or incidental to the business. The coverage which Pettyjohn seeks to impress upon Nix and, through Nix, The Travelers, does not fall within the plain terms of the policy. The policy does not provide coverage for personal liability arising from personal matters and cannot be extended to provide coverage for such liability. There is no ambiguity in the policy, and there being no ambiguity, "the plain meaning of the policy obviously controls." *Ranger Ins. Co. v. Culberson*, 454 F.2d 857, 860 (5th Cir. 1971).

We conclude, therefore, that the evidence in this case submitted to the district court in support of and in opposition to the motion for summary judgment, viewed in a light most favorable to the party resisting the motion, Pettyjohn, *Northwest Power Products, Inc. v. Omark Industries*, 576 F.2d 83, 85 (5th Cir. 1978), reflects that the liability, if any, of Nix developed from an apparent family matter which later escalated into an altercation resulting in the shooting of Pettyjohn by Nix. It is clear that this business policy insures only against liability arising out of, or incidental to, the conduct of the business of Harold Nix. The facts in this case show as a matter of law that the liability, if any, of Mr. Nix arose out of a purely personal altercation which was unrelated to the operation of the covered business and, therefore, the business insurance policy provides no coverage.

Accordingly, the action of the trial judge in determining that there was no genuine issue of material fact and, after having done so, in entering the final judgment in favor of The Travelers is AFFIRMED.