SOCIETY INSURANCE, a Mutual Company, Plaintiff-Respondent,†

v.

Phil LINEHAN, d/b/a Linehan's Old Coach Tavern,
Defendant-Co-Appellant,

Jeffrey LITVINOFF, Patricia L. Litvinoff and Wisconsin
Department of Health and Family Services,
Defendants,

Dakota LITVINOFF, by his Guardian ad Litem, Michael
E. Sias, Defendant-Appellant.

Court of Appeals

*No. 00–0195. Submitted on briefs July 10, 2000.—Decided
July 25, 2000.*

2000 WI App 163

(Also reported in 616 N.W.2d 918.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gregory R. Wright* of *Gregory R. Wright Law Offices, S.C.*, Montello.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Shane J. VanderWaal* of *Kelley, Weber, Pietz & Slater, S.C.*, Wausau.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.*, Hartford.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Phil Linehan, Dakota Litvinoff, Jeffrey Litvinoff, Patricia L. Litvinoff, and

the Wisconsin Department of Health and Family Services (collectively Linehan) appeal a summary judgment in favor of Society Insurance finding no coverage under a business liability insurance policy for a dog bite. Linehan argues that he is insured under the terms of his policy for any liability due to an animal kept in the conduct of his business, absent any policy exclusions to the contrary. We agree and therefore reverse.

## BACKGROUND

¶ 2.   Linehan was the sole proprietor of Old Coach Tavern, which was insured under a business insurance policy issued by Society. Linehan owned a dog named Rudd. According to Linehan, Rudd served an important business function as the tavern's mascot. Society conceded that Rudd served a business purpose because "everyone comes in the tavern to see the dog." In addition, Rudd slept at the tavern at night, providing some security against burglary.

¶ 3.   Linehan was out of town on the day of the attack and had given the bartender instructions not to let Rudd outside. Rudd, however, was let out of the tavern and injured Dakota, a two-year-old child, on property adjacent to the tavern and owned by someone else.

¶ 4.   Society brought an action requesting that the circuit court declare there was no coverage for Dakota's injuries under the tavern's business policy. The circuit court granted Society's motion and this appeal followed.

## DISCUSSION

¶ 5. We review a summary judgment decision de novo, applying the same standard as the circuit court. *See Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). A motion for summary judgment must be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2).[1]

¶ 6. We interpret an insurance policy's terms without deference to the circuit court's decision. *See Kaun v. Industrial Fire & Cas. Ins. Co.*,148 Wis. 2d 662, 667, 436 N.W.2d 321 (1989). "The construction of words and phrases in insurance policies is generally a matter of law and is controlled by the same rules of construction as are applied to contracts generally." *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). "Where no ambiguity exists in the terms of the policy, we will not engage in construction, but will merely apply the policy terms." *Id.* at 736.

¶ 7. The initial inquiry is whether Linehan is an insured as defined in the policy. The relevant portion of the policy states:

C.   WHO IS AN INSURED

1.   If you are designated in the Declarations as:

a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

Linehan is designated in the declarations and is the sole owner of the tavern. Thus, the next question becomes whether his liability arises "with respect to the conduct of the business."

¶ 8. The circuit court focused on the dog's activity at the time of the bite. It observed that Rudd was "wandering around aimlessly in a vacant field owned by someone else and allegedly assaulting patrons of another tavern . . . . The alleged conduct took place off of the business premises, in an area that was not owned by the business owner, in an area where there was no business or commercial activity of any kind that takes place, especially not by the insured."[2]

¶ 9. On appeal, Society similarly focuses on the dog's activity at the time of the bite. Society contends that for Linehan to be covered, Rudd must have been furthering the conduct of the business when it attacked Dakota, that the incident must have been part of the insured's business activities, and that it must have been directly related to a specific business purpose.

¶ 10. Linehan, on the other hand, focuses on the keeping of Rudd. He points out that Rudd was property. Linehan's liability, according to him, arises from his activities and the activities of his employees, not from the activity of his property. Thus, he concludes that keeping the dog was part of the conduct of his business.

---

[2] The circuit court recognized however, that Linehan's policy is a standard form business liability insurance policy which covers bodily injuries caused by accidents anywhere in the "coverage territory," which is defined in the policy to be anywhere within the United States, Puerto Rico, and Canada. The policy does not limit coverage to customers of the tavern, nor does it contain any exclusions pertaining to injuries arising out of the owning or keeping of animals.

¶ 11.  First, we conclude that "conduct of a business" is unambiguous. The term is not defined in the policy. However, we give the language its plain meaning. *See Kremers-Urban Co.*, 119 Wis. 2d at 736. We choose to follow the lead of other appellate courts called upon to interpret similar language found under "WHO IS AN INSURED" as unambiguous. For example, in *Travelers Indem. Co. v. Nix*, 644 F.2d 1130 (5th Cir. 1981), the insured owned a gasoline station. An argument ensued between the owner and his son. A customer at the station intervened and the owner shot the customer in the leg. The owner tendered his defense to his insurance carrier. *See id.* at 1131. The court held that the owner's policy did "not provide coverage for personal liability arising from personal matters and cannot be extended to provide coverage for such liability. There is no ambiguity in the policy . . . ." *Id.* at 1132.

¶ 12.  Also, in *Employers Mut. Cas. Co. v. Kangas*, 245 N.W.2d 873 (Minn. 1976), the defendant had a business liability policy containing the phrase "conduct of a business." The insured was a welder and had taken his business to a local racetrack to perform services on race cars. While there, he lit a firecracker and injured the plaintiff. The court concluded that there was no ambiguity in the meaning of the policy. It held there was no coverage because shooting fireworks had no connection with the conduct of the business. *See id.* at 876.

¶ 13.  Second, we conclude that "conduct of a business" must be determined based on the actions of Linehan and his employees, not on the actions of Rudd. Society cites a number of cases,[3] including *Nix* and

[3] Society cites *Transcontinental Ins. Co. v. Edwards*, 1996 W.L. 814532 (W.D. Ark.) (kidnapping and assault are not

*Kangas*. However, all of these cases decide the coverage issue based on the conduct of business owners, business employees, or business agents. They do not determine coverage based on the conduct of a piece of property, such as a dog. Thus, we conclude it is improper to focus on the dog's activities at the time of the attack.

¶ 14.   Third, we note from the cases cited by Society that conduct is either personal or business. Thus, *Nix* held that the policy provided "coverage for liability arising out of the conduct of the business, or incidental to the business." *Id.* at 1132. It did not cover activities arising from personal matters.

¶ 15.   The question then is whether the conduct of Linehan and his employees, with respect to the dog, was business or personal. In other words, when Society argues that Linehan's conduct was not business, the only alternative is that his conduct was personal. That simply defies the undisputed facts. Society concedes that Rudd served a business purpose. It was a mascot and provided some security. On this particular day

included in the concept of the business); *Edelman v. Pacific Employers Ins. Co.*, 1997 W.L. 781814 (Conn. Super. Ct.) (no coverage for assault even though it occurred on the insured premises); *Jones v. American Fam. Mut. Ins. Co.*, 666 N.E.2d 1152 (Ohio Ct. App. 1995) (fist fights between employees are presumed to be outside the scope of employment); *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146 (11th Cir. 1994) (employee who commits assault is not furthering the business of his employer); *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 387 N.W.2d 751 (1986) (tavern owners protected from claims arising out of injuries occurring to members of the public caused by the harmful acts of third persons); *Winther v. Valley Ins. Co.*, 915 P.2d 1050 (Or. Ct. App. 1996) (the business of a partnership does not include internecine legal strife).

Rudd had been in the tavern and was let outside by one of Linehan's employees. While outside, the dog bit Dakota. Because Linehan was keeping the dog as part of the conduct of his business, and because the child was injured while the dog was released temporarily from the tavern, we are satisfied there was coverage under Society's insurance policy.

*By the Court.*—Judgment reversed.

¶ 16. HOOVER, P.J. *(concurring)*. The issue is, what does "conduct of a business" mean in the definition of an insured. The majority says that the phrase is unambiguous. I respectfully disagree, but concur in the result the majority reaches for a different reason.

¶ 17. In concluding that "conduct of business" is unambiguous, the majority relies on foreign authority rather than an analysis of the policy's language. I, however, am not persuaded that the cases relied upon by the majority are of assistance, because they ultimately hold merely that an individual engaged in what is clearly personal activity is unambiguously not an insured under a business liability policy.

¶ 18. Linehan says that "conduct of a business" encompasses owning or maintaining business property. A terse statement of Society's position is that a tortfeasor's liability must arise out of a business activity in furtherance of the business. I view both constructions as reasonable,[1] without regard to the potentially absurd results either interpretation might result in. If language in an insurance policy has two reasonable interpretations, it is ambiguous, *Ennis v.*

---

[1] While not dispositive, I note that Judge Carlson accepted Society's construction while the majority agrees with Linehan's interpretation.

*Western Nat'l Mut. Ins. Co.*, 225 Wis. 2d 824, 831, 593 N.W.2d 890 (Ct. App. 1999), and is construed in favor of coverage. *Id.* at 833–34. If Society intends for the phrase to have the meaning it urges on this court, it may so define it in the policy.