Richard R. RAYBURN and Rhonda Rayburn, Plaintiffs,

v.

MSI INSURANCE COMPANY and Mark Phillips,
Defendants,

SHEBOYGAN FALLS MUTUAL INSURANCE COMPANY,
Defendant-Appellant,

SOCIETY INSURANCE, a Mutual Company, Defendant-
Respondent.

Court of Appeals

*No. 00–0749. Submitted on briefs December 7, 2000.—Decided
December 21, 2000.*

2001 WI App 9

(Also reported in 624 N.W.2d 878.)

745

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Kuborn* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.* of Hartford.

Before Vergeront, Deininger, JJ., and Hue, J.[1]

¶ 1. VERGERONT, J. The issue on this appeal is the interpretation of a business owner's liability insurance policy that defines the insured, when identified as an individual on the declaration page, as that individual, "but only with respect to the conduct of a business." Society Insurance issued the policy to Mark Phillips, who was identified as an individual and whose business was identified as "residential carpentry" on the declaration page of the policy. The trial court ruled Phillips was not engaged in the conduct of his business when he was helping his father construct a shed on his father's property, and, therefore, the policy provided no coverage for a neighbor who was injured during the construction allegedly due to the negligence of Phillips. We agree with the trial court's conclusion and therefore affirm.

## BACKGROUND

¶ 2. The relevant facts are not disputed. Mark Phillips is the sole proprietor of Phillips Construction, the business of which is building homes. He has no employees. He was helping his father build a shed on his father's property, along with his brother and a neighbor, Richard Rayburn, when Rayburn was

---

[1] Circuit Judge William Hue is sitting by special assignment pursuant to the Judicial Exchange Program.

injured. The type of work Phillips did on that date for his father was the same type of work he routinely did in his business. Phillips was not paid for his work on the shed and did not receive anything of value for it. He volunteered his time as a son "on a cooperative family project." Phillips Construction was not hired to do the work, did not send any invoices for the work, and received no compensation for the work. There were no business records at Phillips Construction pertaining to the work on the shed. The only equipment belonging to Phillips that was used in the shed project was a couple of scaffolding planks, a ladder and Skil saw. He owned these personally and had owned them prior to going into business as Phillips Construction.

¶ 3.  Phillips' business owner's liability policy from Society Insurance provides in section A1(a) that Society will pay those sums that "the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies." Section C provides in part:

WHO IS AN INSURED

1.   If you are designated in the Declarations as:
     a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

The declaration page of the policy names Phillips as the insured, and states the named insured is "Individual" and the business description is "Residential Carpentry."

¶ 4.  Rayburn's complaint alleged that Phillips' father and/or Phillips and/or his brother were negligent.  The amended complaints also named as defendants Society and Sheboygan Falls Mutual Insur-

748

ance Company, which issued Phillips' homeowner's policy. Both insurers moved for summary judgment, asking for a declaration that their respective policies did not provide coverage and that they had no duty to defend or indemnify Phillips.[2]

¶ 5. The trial court decided Sheboygan Falls homeowner's policy provided coverage but Society's business owner's policy did not. The conclusion of no coverage under Society's policy was based on the court's reasoning that one is not engaged in the conduct of one's business simply because one is performing the type of work one performs in one's business, and Phillips was involved in a personal, volunteer act when the accident occurred.

¶ 6. Thereafter, the parties reached a settlement and entered into a stipulation and order for dismissal. The stipulation preserved the right of Sheboygan Falls to seek indemnification and/or contribution from Society. Sheboygan Falls appeals the court's judgment declaring that Society's policy does not provide coverage for Phillips.

## DISCUSSION

¶ 7. We review the grant or denial of summary judgment de novo and apply the same standards as the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). Summary judgment is proper if there are no disputed issues of fact and one party is entitled to judgment as a matter of

---

[2] MSI Insurance Company, which issued a homeowner's policy to Phillips' father, was also named as a defendant. The court determined on motion for summary judgment that there was coverage under its policy for any negligence of Phillips' father, but not for Phillips or his brother.

law. WIS. STAT. § 802.08(2) (1997–98).[3] The interpretation of an insurance contract is also a question of law, which we review de novo. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984).

¶ 8. We construe the words in an insurance contract as a reasonable person in the position of an insured would understand them. *Garriguenc v. Love*, 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). A word or phrase in an insurance contract is ambiguous if it is susceptible to more than one reasonable construction, and whatever ambiguity exists is resolved against the insurer as the drafter. *Id.* at 135. However, when the terms of a policy are plain on their face, we may not rewrite them. *Id.*

¶ 9. Sheboygan Falls contends there is more than one reasonable interpretation of the phrase "with respect to the conduct of a business" and the phrase should therefore be construed in favor of the insured. In support of its position, Sheboygan Falls points out there is no definition in the policy of "business" or "conduct of a business," and it is reasonable to interpret the phrase as covering the carpentry services Phillips ordinarily performs in his business capacity whether or not he is paid for them. Sheboygan Falls urges us to look at the activity Phillips was engaging in at the time of the accident and not the fact that he was not paid to build the shed. Society responds that the language in dispute is not ambiguous and plainly applies only to activities that are for the purpose of the business.

¶ 10. At the time the parties submitted their briefs there was no reported Wisconsin case interpret-

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

ing this policy language. However, we have recently done so in *Society Ins. v. Linehan*, 2000 WI App 163, 238 Wis. 2d 359, 616 N.W.2d 918, *review denied*, although the facts there presented a different issue.

¶ 11.  In *Linehan*, the business owner was the sole proprietor of a tavern. He was sued because the dog he owned, which stayed at the tavern, was let outside by an employee and attacked someone. The insurer (also Society) conceded the dog served a business purpose because patrons came to the tavern to see the dog; also, the dog provided some security for the tavern because it slept there at night. However, the insurer argued there was no coverage because the dog was not furthering the purpose of the business when it attacked the person. The business owner contended that the phrase "with respect to the conduct of a business" focused on his activities and the activities of his employees, not the activity of the dog, which was his property. He asserted that his keeping the dog was part of the conduct of his business.

¶ 12.  We decided the phrase "conduct of a business" was not ambiguous, although we recognized it was not defined in the policy; we were persuaded by a number of cases in other jurisdictions that held the same phrase was not ambiguous. *Id.* at ¶¶ 11–12. We agreed with the business owner that the phrase required that we focus on his activities, not the activities of his dog, which was his property. *Id.* at ¶ 13. We observed that, based on the cases from other jurisdictions, "conduct is either business or personal." *Id.* at ¶ 14. We therefore framed the dispositive question as whether the conduct of the business owner and his employees, with respect to the dog, was business or personal. *Id.* at ¶ 15. Because it was undisputed the dog served a business purpose, we concluded that the

owner's keeping of the dog was part of the conduct of his business, and because the injury occurred when an employee temporarily released the dog from the tavern, we concluded the owner was an "insured" as defined in the policy. *Id.*

¶ 13. Although we held in *Linehan* that the phrase "conduct of a business" was not ambiguous, we determine ambiguity in the context of the issues and facts before us, and, therefore, the same phrase may be ambiguous in one case but not in another. *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. This case, unlike *Linehan* and the cases from other jurisdictions we cited there, is concerned with an activity that is indisputably one engaged in by the business owner in his business; the dispute here centers on whether the activity must, in addition, be engaged in for the purpose of the business. The question, therefore, is whether a reasonable person would understand that one is engaged in the conduct of a business only when the purpose of his or her activity is the business.

¶ 14. In arguing to the contrary, Sheboygan Falls fails to focus on the policy language. The language is not "only with respect to activities that are your ordinary business activities," but "only with respect to the conduct of a business of which you are the sole owner." We conclude the language is not ambiguous on this point, because a reasonable person would understand that one is not engaged in the conduct of a business when the activity is not performed for the purpose of the business, even if the activity is one the insured ordinarily engages in as the sole owner of the business.

¶ 15. This construction of the phrase is consistent with the distinction we made in *Linehan* between

business and personal activities and with our focus there on the purpose of owning the dog. In *Linehan*, the keeping of the dog, we concluded, constituted the conduct of the business because keeping the dog had a business purpose, not a personal purpose. *Id.* at ¶ 15. In this case, Phillips' activity of helping his father build the shed does not constitute the conduct of his business unless he is performing that activity for the purpose of his business.

¶ 16.   Based on the undisputed facts, we conclude Phillips was not acting "with respect to the conduct of [his] business" when helping his father build the shed because he did not do so for the purpose of his business; he did so for the personal reason of helping his father. Phillips' use of a few tools from his business does not alter this conclusion: the use of those tools does not, in this case, alter the purpose of his activity.

¶ 17.   We agree with Sheboygan Falls that a sole proprietor may have a business purpose in providing the services of the business without compensation—for example, to build goodwill and thereby gain new customers, to gain experience useful for the business, or for advertising purposes. We do not suggest that receiving compensation for the services of the business is in all cases necessary to constitute "the conduct of the business." However, there is no evidence in this case that Phillips was helping his father build the shed for these or similar purposes.

¶ 18.   Sheboygan Falls contends *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 514 N.W.2d 1 (1994), supports its position. According to Sheboygan Falls, *Sprangers* holds that the focus is on the activity rather than the non-profit status of the insured, and this holding supports its position that we should look

only at the activity Phillips was engaged in and not its purpose.

¶ 19. The pertinent issue in *Sprangers* was whether the VFW was "in the business of" selling or serving alcoholic beverages, because the VFW's business insurance policy excluded bodily injury caused by an intoxicated person if the insured was "in the business of" manufacturing, distributing, selling, serving or furnishing alcoholic drinks. The plaintiff was injured when his motorcycle was struck by a driver who had been drinking alcohol at a VFW clubhouse. The court concluded the VFW was "in the business of selling . . . [and] . . . serving . . . alcoholic beverages," rejecting the argument that the exclusion did not apply because of the non-profit status of the VFW. *Id.* at 538. The court reasoned that: (1) the existence of more than one dictionary definition for " business" did not, in itself, render the policy language ambiguous; (2) the nature and purpose of the policy bear on the reasonable expectation of the insured and the terms of the policy showed coverage was tied to the activities of the VFW and not to its non-profit status, since the policy used the term "business" in numerous places to encompass various types of activities; and, (3) exclusions in a liability policy are generally directed to a risk, which results from the nature of the activity, not to the corporate status of the insured. *Id.* at 537–40.

¶ 20. Other than the use of the word "business," the phrase at issue in *Sprangers* is not similar to that in this case, and *Sprangers* teaches we must look to the purpose and terms of the particular policy to decide whether the meaning of that word is ambiguous. The *Sprangers* court focused on the activities of the insured rather than its non-profit status because of the policy language at issue and its context, not because the use

of "business" in every phrase and every context commands an attention to the type of activity engaged in to the exclusion of the activity's purpose. Unlike *Sprangers*, we are not concerned with whether Phillips Construction is "in the business of" residential carpentry. That is undisputed. The dispute here is whether Phillips, the sole owner of the business, was acting "with respect to the conduct of a business" when he used his residential carpentry skills to help his father build a shed. *Sprangers* provides no support for concluding that Phillips was.

¶ 21.   Because Phillips was not an insured within Society's policy definition, the trial court correctly concluded there was no coverage under the policy and Society did not have an obligation to either defend or indemnify Phillips.

*By the Court.*—Judgment affirmed.