COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1568**

STATE OF WISCONSIN

Cir. Ct. No.  2018CV115

IN COURT OF APPEALS
DISTRICT III

KEVIN L. MATHISON AND RICHARD WHITING,

    PLAINTIFFS-APPELLANTS,

  V.

WAYNE R. KULHANEK,

    DEFENDANT,

AUTO-OWNERS INSURANCE COMPANY,

    DEFENDANT-RESPONDENT.

        APPEAL from a judgment of the circuit court for Oneida County: PATRICK F. O'MELIA, Judge.  *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kevin Mathison and Richard Whiting appeal from a summary judgment dismissing Auto-Owners Insurance Company from this action and declaring there was no insurance coverage for their claims under Auto-Owner's commercial general liability (CGL) policy issued to Wayne Kulhanek. We conclude Kulhanek was not an insured under the policy and thus, there was no grant of coverage in the first instance. We therefore affirm the judgment.

## BACKGROUND

¶2 Kulhanek owned a building in Rhinelander and operated his business, NOW Equipment LLC, out of a portion of that building. NOW Equipment LLC sold and reconditioned restaurant equipment. Kulhanek leased the space in which the business was operated to the LLC, of which he was the sole member.

¶3 Another portion of Kulhanek's building contained a garage with a vehicle lift, which Kulhanek leased for $650 monthly to Mathison for a transmission repair business. Kulhanek and Mathison did not have a written lease agreement. Mathison sometimes worked on Kulhanek's vehicles in lieu of making rent payments.

¶4 Mathison spent several months in jail during the leasehold period and he was several months behind on his rental payments at the time he was incarcerated. At that time, personal property owned by Whiting was in the garage rented by Mathison. Shortly after Mathison was incarcerated, Kulhanek noticed lights on in the garage. Only Mathison and Kulhanek possessed keys to the garage overhead and service doors. Kulhanek let himself into the garage with his key to

investigate, but he did not notice anyone inside, and left after five minutes without discovering who, if anyone, had been in the garage on that occasion.

¶5 On another occasion while Mathison was in jail, Kulhanek noticed footprints in the snow leading into the garage. After noticing the service door was open, Kulhanek checked inside but did not notice anything out of the ordinary. Nevertheless, he changed the locks on both garage doors thereafter. Kulhanek did not notify Mathison that he had changed the locks, but he had a new set of keys for Mathison pending his release from jail.

¶6 Before the garage locks were changed, Whiting informed Kulhanek that he wanted to remove his vehicle parts from Mathison's shop. Kulhanek denied this request because he was unaware of which parts belonged to which customers.

¶7 During Mathison's incarceration, Kulhanek began looking for a new potential tenant for the garage, and in the process of getting "it ready to rent" he contacted a junk dealer. Kulhanek instructed the junk dealer to "just take the junk," but he did not oversee the removal or create an inventory of removed items. Kulhanek did not remove anything from the garage other than what was removed by the junk dealer. Kulhanek was not paid for the junk.

¶8 After Mathison was released from jail, Kulhanek advised him that he could not access the garage until he paid his back rent. Kulhanek also told him that he was terminating Mathison's lease. After Mathison made a payment toward his back rent, Kulhanek permitted him access to remove his personal property from the garage. He also told Mathison that he had hired a person to remove scrap metal from the garage while Mathison had been incarcerated. Upon entering the garage, Mathison realized that some of his personal property was missing,

including transmissions and transmission cores, hand tools, a tire machine, a floor jack, scan tools, and a 150-horsepower Evinrude outboard motor. Automobile parts owned by Whiting were also missing, including a transmission that Mathison was rebuilding for him.

¶9 Mathison and Whiting subsequently commenced the present lawsuit against Kulhanek, alleging negligent bailment and conversion. An amended complaint added Auto-Owners as a defendant. Auto-Owners moved to bifurcate and stay proceedings on the merits pending a determination on insurance coverage. Auto-Owners also counterclaimed and cross-claimed, seeking a declaratory judgment on the coverage issues.

¶10 Following discovery, Auto-Owners moved for summary judgment, which the circuit court granted. The court determined that Kulhanek did not qualify as an "insured" under Auto-Owners' CGL policy. The court further concluded there was no "occurrence" triggering coverage, and that an "intentional acts" exclusion also precluded coverage. A motion for reconsideration was filed, on which there was no specific ruling by the court. This appeal follows.

## DISCUSSION

¶11 The issue of insurance coverage is often addressed through a motion for summary judgment, and the interpretation of an insurance contract presents a question of law that we decide de novo. *Siebert v. American Fam. Mut. Ins. Co.*, 2011 WI 35, ¶28, 333 Wis. 2d 546, 797 N.W.2d 484. We must interpret an unambiguous insurance policy according to its plain terms as understood by a reasonable person in the position of the insured. *Id.*, ¶31. We do not construe policy language to cover risks the insurer did not contemplate or underwrite and

for which it did not receive a premium. ***Estate of Sustache v. American Fam. Mut. Ins. Co.***, 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845.

¶12 The insuring agreement under the CGL policy at issue provided an initial grant of liability coverage, in relevant part, for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy's declarations page named only NOW Equipment LLC as the "INSURED." The policy further provided, "The word 'insured' means any person or organization qualifying as such under Section II—Who Is An Insured." Section II of the policy provided, in relevant part:

> **SECTION II—WHO IS AN INSURED**
>
> 1. If you are designated in the Declarations as:
>
>   ….
>
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

¶13 We conclude Kulhanek was not an insured under the unambiguous language of the policy. He was not named as an insured—rather, the policy clearly designated NOW Equipment LLC as the named insured. Kulhanek was a member of the LLC, but as a member, Kulhanek could receive coverage only while engaged in the conduct of the LLC. According to the unambiguous language of the insurance policy, Kulhanek could therefore only be an insured as a member of the LLC with respect to the conduct of NOW Equipment LLC's business.

¶14 Under the policy, property management cannot reasonably be considered part of the conduct of NOW Equipment LLC. Kulhanek testified at his deposition that NOW Equipment LLC was in the business of refurbishing and selling restaurant equipment. The business description on the policy's declarations page listed the LLC's business as "Refrigerator Refurb." Under either description, NOW Equipment LLC was not in the business of commercial property rental, and any actions Kulhanek took in his role as Mathison's landlord were therefore not part of the conduct of NOW Equipment LLC's business.

¶15 WISCONSIN STAT. ch. 183 (2017-18)[1] governs limited liability companies, and WIS. STAT. § 183.0401 provides that the manager of an LLC is responsible for "management of the business or affairs of the limited liability company." Thus, Kulhanek could only act as a manager of NOW Equipment LLC when he was conducting the business of refurbishing or selling restaurant equipment. Kulhanek did not act with a purpose to benefit the business or affairs of the LLC when he allegedly failed to secure personal property owned by Mathison and Whiting. *See **Rayburn v. MSI Ins. Co.**,* 2001 WI App 9, ¶16, 240 Wis. 2d 745, 624 N.W.2d 878 (2000). The very nature of the "conduct of business" clause in the CGL policy limits coverage to liability arising from operating the LLC. Again, the LLC was not in the business of renting commercial space. A reasonable person in Kulhanek's position, therefore, would not understand that the duties of a manager of the LLC included leasing a portion of a building not owned or leased by the LLC to a third party.

---

[1] References to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶16    Similarly, Auto-Owners did not contemplate underwriting the risk of Kulhanek renting out a portion of his building that was unoccupied by the LLC and engaging in bailment of the personal property belonging to the tenant or his customers. Kulhanek's owning and leasing real property he personally owned is separate and distinct from the conduct of the LLC's business. It would be unreasonable for Kulhanek to assume that a CGL policy providing coverage to NOW Equipment LLC also afforded personal liability coverage to Kulhanek in relation to his directing the removal of items from the garage space he rented to Mathison.

¶17    Mathison and Whiting argue a policy provision applies stating that an insured is also "any person … *while acting as your real estate manager.*" (Emphasis added.)   Mathison asserts that he was managing a "sublease" from the LLC to Mathison. Mathison and Whiting also contend that a genuine issue of material fact exists as to whether NOW Equipment LLC or Kulhanek, individually, was the landlord of the space Mathison used. They note that invoices submitted to Mathison were issued by NOW Equipment LLC, not Kulhanek personally. Mathison also argues that if Kulhanek collected rents personally, he would have been required to file a Schedule E form with his taxes. Mathison asserts, "The invoices and lack of Schedule E are contemporaneous evidence of who [sic] Kulhanek and Mathison considered the landlord to be."

¶18    Mathison provides no citation to the record on appeal concerning any evidence of tax returns that may have been filed, and we shall therefore not further consider the issue. *See **Lechner v. Scharrer***, 145 Wis. 2d 667, 676, 429 N.W.2d 491 (Ct. App. 1988). In addition, "your" in the above-referenced real estate manager provision refers to NOW Equipment LLC, and the LLC did not have a real estate manager nor own real estate. Finally, the deposition testimony

shows that Kulhanek, as the owner of the building, authorized NOW Equipment LLC to collect rent on his behalf. Importantly, Mathison also clarified, in his deposition, that his understanding was he owed rent to Kulhanek personally, not to the LLC. Kulhanek therefore, raises no genuine issues of material fact as to the identity of Mathison's landlord.

¶19 Accordingly, we conclude, based on the summary judgment record, that Kulhanek was not an insured under the policy, and accordingly, there was no grant of coverage in the first instance in relation to Mathison's and Whiting's claims. Because Auto-Owners' policy provided no coverage, we need not reach other issues regarding whether there was an "occurrence," or whether any exclusions operated to preclude coverage. *See **Gross v. Hoffman***, 227 Wis. 296, 300, 277 N.W. 663 (1938).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.