COURT OF APPEALS
DECISION
DATED AND FILED

February 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2092**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV399

IN COURT OF APPEALS
DISTRICT IV

BARBARA UEBELACKER,

PLAINTIFF-APPELLANT,

V.

ROCK ENERGY COOPERATIVE AND SHANE LARSON,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Barbara Uebelacker appeals a circuit court order granting summary judgment to her former employer Rock Energy Cooperative and its CEO Shane Larson dismissing her invasion of privacy claims under WIS. STAT. § 995.50 (2021-22).[1]  As discussed further below, Uebelacker's claims are based on the viewing and sharing of a Facebook Messenger conversation between Uebelacker and a co-worker that Rock Energy found on the co-worker's office computer.  We conclude that Uebelacker does not show that there is any dispute of material fact to preclude summary judgment dismissing her claims.  Therefore, we affirm.

## BACKGROUND

¶2    During the time that Uebelacker was working at Rock Energy, Rock Energy terminated the employment of her friend and co-worker, Angie Schuman.  Shortly thereafter, Rock Energy's IT manager, Bud Booth, accessed Schuman's office computer to transfer documents so her supervisor could access them.[2]

¶3    Booth had previously disabled Schuman's user account with Rock Energy upon her termination to prevent her from logging in to the account by any means.  To access Schuman's office computer, Booth re-enabled the account, changed the account password, and logged in on the computer using the new password.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Rock Energy's summary judgment submissions contain multiple statements from Booth, including testimony, a sworn affidavit, and a non-sworn statement that the parties reference in their briefing.  We draw from these statements in summarizing the background facts.  As discussed further below, Uebelacker does not point to any evidence contradicting Booth's statements as summarized here.

¶4    After Booth reviewed files on Schuman's computer, he began closing programs that Schuman had left open.  Booth noticed that there was an active tab with Schuman's Facebook feed that included several open chat windows.  One of the windows showed a Facebook Messenger conversation between Uebelacker and Schuman in which Uebelacker was critical of Rock Energy's management.

¶5    According to Booth's statements, he was able to view the Facebook Messenger conversation without using any personal password of Schuman's.  Rather, the only password Booth used was the company password that he had created to log in to Schuman's company user account.  Based on what he saw on Schuman's computer, Booth concluded that Schuman must have linked her personal Facebook Messenger account to her office computer.  Accordingly, Schuman's Facebook messages were displayed in an open and unsecure manner, available to be viewed by anyone who accessed her computer.

¶6    Booth took a screen shot of the Facebook Messenger conversation between Uebelacker and Schuman.  The conversation was then shared with three other Rock Energy employees:  Schuman's supervisor, Larson, and a human resources employee.  Uebelacker was demoted and later terminated for "lack of commitment to management."

¶7    Uebelacker filed suit against Rock Energy and Larson.[3]  She alleged that they invaded her privacy in violation of WIS. STAT. § 995.50 by accessing and publicizing her Facebook messages.  Rock Energy moved for summary judgment,

_____

[3] In the remainder of this opinion, we refer to Rock Energy and Larson collectively as "Rock Energy."

3

arguing that the facts do not establish a violation of the statute. The circuit court granted the motion and dismissed Uebelacker's claims.

¶8 Uebelacker appeals.[4]

## DISCUSSION

¶9 We review a summary judgment decision de novo, applying the same legal standards as the circuit court. *Society Ins. v. Linehan*, 2000 WI App 163, ¶5, 238 Wis. 2d 359, 616 N.W.2d 918. Our review here involves the interpretation and application of a statute, a question of law that we also review de novo. *Kamps v. DOR*, 2003 WI App 106, ¶11, 264 Wis. 2d 794, 663 N.W.2d 306.

---

[4] We note that the parties' briefing does not comply with the Rules of Appellate Procedure in multiple respects. For the parties' future reference, we point out the following violations of the Rules:

First, Uebelacker's appellant's brief contains citations to her appendix instead of the record, a violation of WIS. STAT. RULE 809.19(1)(d); *see also Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 (explaining that citations only to the appendix are inadequate and that "[w]e have no duty to scour the record to review arguments unaccompanied by adequate record citation"). Rock Energy's brief also contains problematic record citations, in particular its citations to its 379-page summary judgment affidavit. Some of these citations refer to exhibits in the affidavit (e.g., "Exh. B, ¶14") without providing a record item number and record item page number (e.g., R.19:318).

Second, Rock Energy's respondent's brief fails to comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format and are electronically stamped with page numbers when they are accepted for eFiling. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

Finally, we remind the parties that the argument sections of their briefs should reference the parties by name, rather than by party designation. *See* WIS. STAT. RULE 809.19(1)(i) and (3)(a)2.

¶10    "Summary judgment is proper if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law." ***Pum v. Wisconsin Physicians Serv. Ins. Corp.***, 2007 WI App 10, ¶6, 298 Wis. 2d 497, 727 N.W.2d 346.  Here, for the reasons explained below, Uebelacker does not show that there is any genuine issue of material fact to preclude summary judgment against her.

¶11    Uebelacker contends, as we understand it, that the evidence in this case establishes that Rock Energy invaded her privacy in violation of two provisions in WIS. STAT. § 995.50, or at least that the evidence creates a genuine issue of material fact relating to whether there were violations.  The first provision requires, as relevant here, an intrusion into "a place that a reasonable person would consider private."  *See* § 995.50(2)(am)1.  The second provision requires, among other elements, "[p]ublicity" of a matter concerning someone's private life.  *See* § 995.50(2)(am)3.[5]   In the sections that follow, we address Uebelacker's arguments as to each provision.

---

[5] WISCONSIN STAT. § 995.50(2) provides as follows:

>    (am)  In this section, "invasion of privacy" means any of the following:
>
>    1. Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, except as provided under par. (bm), in a place that a reasonable person would consider private, or in a manner that is actionable for trespass.
>
>    ….
>
>    3. Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed.

### A. WIS. STAT. § 995.50(2)(am)1.—Intrusion into a Place that a Reasonable Person Would Consider Private

¶12     As noted, the first statutory provision on which Uebelacker relies requires an intrusion into "a place that a reasonable person would consider private." *See* WIS. STAT. § 995.50(2)(am)1.  According to Uebelacker, a jury could find that Rock Energy violated this provision based on the IT manager Booth's viewing of her Facebook Messenger conversation with Schuman. Uebelacker argues that she had a reasonable expectation of privacy in her Facebook Messenger conversations.  She argues that the conversation was intended to be private, that Facebook Messenger is password-protected, and that Rock Energy is effectively guilty of "hacking" into her private Facebook Messenger account.

¶13     Rock Energy counters that Uebelacker's argument ignores the limited definition of "a place" in WIS. STAT. § 995.50(2)(am)1., as construed in ***Hillman v. Columbia County***, 164 Wis. 2d 376, 474 N.W.2d 913 (Ct. App. 1991). Rock Energy also argues that Uebelacker had no reasonable expectation of privacy in the active and open windows on Schuman's office computer.

¶14     We agree with Rock Energy.  First, in ***Hillman***, this court concluded that the term "a place" in the statute means a geographical place that, as relevant in ***Hillman***, excluded a file containing medical records.  ***Id.*** at 392.  Uebelacker fails to acknowledge the ***Hillman*** decision, let alone develop an argument explaining how it might be legally distinguished or deemed inapplicable to the facts here.

¶15     Second, even if we construed the definition of "a place" more broadly, we would still conclude that the facts do not establish that Booth (or anyone else at Rock Energy) intruded into a place that a reasonable person would

consider private by viewing the Facebook Messenger conversation on Schuman's office computer. As noted above, Booth's affidavit and other statements reflected that he viewed Schuman's office computer using only a company password; that Booth did not use Schuman's Facebook password or any other personal password of Schuman's to access Schuman's computer; and that the conversation was displayed in an active and open window on the computer. Uebelacker does not point to any evidence to the contrary. She also does not point to any evidence that Booth's actions were contrary to any company rule or policy that could have caused Rock Energy employees to have a reasonable expectation of privacy in information displayed on their office computers.

¶16    Uebelacker argues that she submitted an expert report that creates a genuine issue of material fact relating to whether the Facebook Messenger conversation was located "on" Schuman's office computer, or instead located "on" a Facebook server. However, Uebelacker does not sufficiently explain what part of the expert report could support this argument. She appears to be asserting that the report creates a dispute as to whether Booth, by viewing the Facebook conversation, accessed or intruded into a Facebook server. However, as far as we can tell from the report's contents, the report does not support such an assertion.

¶17    The report also does not create a dispute as to whether Booth, contrary to his averments, needed Schuman's Facebook password to view the conversation. Instead, the report acknowledges the possibility that Schuman was accessing Facebook Messenger on her office computer in a way that allowed access to the application without the need to re-enter her personal password each time.

7

*B.  WIS. STAT. § 995.50(2)(am)3.—Publicity
of a Matter Concerning Someone's Private Life*

¶18    We now turn to the second provision in WIS. STAT. § 995.50 on which Uebelacker relies.  As noted, this provision requires, among other elements, "[p]ublicity" of a matter concerning someone's private life.  *See* § 995.50(2)(am)3. For the reasons we explain below, we conclude that the undisputed facts do not satisfy this "publicity" element.  We also note that, even if Uebelacker could satisfy the publicity element, she has not explained how the evidence could satisfy the remaining elements under § 995.50(2)(am)3.  For these reasons, Uebelacker does not establish that there is a dispute of material fact as to whether Rock Energy invaded her privacy in violation of § 995.50(2)(am)3.

¶19    "'Publicity,' for purposes of [WIS. STAT.] § [9]95.50, has been defined to mean that 'the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" ***Pachowitz v. Ledoux***, 2003 WI App 120, ¶18, 265 Wis. 2d 631, 666 N.W.2d 88 (quoted source omitted). Depending on the circumstances, disclosure to a small number of persons or only one person may satisfy the publicity element. ***Id.***, ¶24.

¶20    Here, it is undisputed that the Facebook Messenger conversation was viewed initially by Booth and then shared with three additional Rock Energy employees:  Schuman's supervisor, Larson, and a human resources employee. Uebelacker argues that this is sufficient under the circumstances to satisfy the publicity element, or at least to raise a jury question on this element.  Rock Energy counters that the circuit court properly relied on ***Zinda v. Louisiana Pac. Corp.***, 149 Wis. 2d 913, 440 N.W.2d 548 (1989), to conclude as a matter of law that Uebelacker cannot satisfy the publicity requirement.  We agree with Rock Energy.

¶21    In **Zinda**, the court concluded that employers have a "conditional privilege" to distribute employment-related information about one employee to other employees with a common interest in the employee's conduct. **Id.** at 923. The court in **Zinda** also concluded that this privilege applies to the invasion of privacy statute. **Id.** at 928. Finally, the court in **Zinda** explained that, although the privilege may be overcome by a showing that the employer abused the privilege, the burden to make this showing is on the claimant. **Id.**

¶22    Here, the undisputed facts appear to fall squarely within the conditional privilege discussed in **Zinda**, and Uebelacker does not argue that there is evidence to show that Rock Energy abused this privilege. Rather, she asserts that she "does not concede that any employment-related privilege applies under section 995.50(2)(am)3." However, as noted, **Zinda** held the contrary. *See* **Zinda**, 149 Wis. 2d at 928. ("[T]he right of privacy statute also includes the defense of conditional privilege."). Uebelacker also asserts, without legal citation, that even if the privilege applies to the invasion of privacy statute, Rock Energy would have the burden to show that it holds the privilege. We reject these arguments as undeveloped.

¶23    Finally, Uebelacker argues that the facts here are similar to those in **Pachowitz**, in which we concluded that the publicity element was a jury question, and that summary judgment here is, therefore, inconsistent with **Pachowitz**. But the facts are not similar. The alleged publicity in **Pachowitz** was not limited to the sharing of information within the same company or organization for an employment-related purpose. *See* **Pachowitz**, 265 Wis. 2d 631, ¶¶4-7.

9

## CONCLUSION

¶24 In sum, for all of the reasons stated above, we affirm the circuit court's order granting summary judgment dismissing Uebelacker's claims.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.