NATIONAL AMERICAN INSURANCE
COMPANY, Plaintiff,

v.

Norman BREAUX, Kenneth Young, Individually and as Representative of the Estate of K.S. Y., a Minor, and Cheryl Young, Individually, Defendants.

No. CIV.A. 1:03CV1378.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 6, 2005.

Fred Lawrence Shuchart, of Kroger, Myers Frisby & Hirsch, Houston, TX, for Plaintiffs.

Bryan Adam Terrell, of Weller Green Toups & Terrell, Ethan L. Shaw of Moore Landrey, Beaumont, TX, for Defendants Norman Breaux Youngs.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court are Plaintiff National American Insurance Company's ("NAICO") Motion for Summary Judgment (# 30) and Defendants and Third–Party Plaintiffs Kenneth Young, Individually and as Representative of the Estate of K.S. Y., a Minor, and Cheryl Young's, Individually (collectively, "the Youngs"), Motion for Summary Judgment (# 32). NAICO seeks a declaratory judgment that it has no duty to defend and/or indemnify Defendant Norman Breaux ("Breaux") for claims asserted against him by the Youngs in the lawsuit styled *Kenneth Young, et al. v. NationsRent, et al.*, No. D–167,925 (136th Dist. Ct., Jefferson County, Tex., filed Sept. 5, 2002) ("the Underlying Lawsuit"). The Youngs seek summary judgment on the grounds that they are improper parties to this lawsuit because they are not in contractual privity with NAICO and, without a judgment in the Underlying Lawsuit, no justiciable controversy exists between them and NAICO. Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that NAICO's Motion for Summary Judgment should be granted and the Youngs' Motion for Summary Judgment should be denied.

## I. *Background*

The incident giving rise to the Underlying Lawsuit in this case occurred on Saturday, August 3, 2002, when Breaux, an employee of Hart Construction, Inc. ("Hart"), was clearing land with equipment known as a Bobcat 763 Skidsteer ("Bobcat") in his backyard at his residence located in Sour Lake, Texas. Hart had leased the Bobcat on July 25, 2002, from NationsRent, a rental company in Port Arthur, Texas, for use at a job at Office Depot in Beaumont, Texas. Neither Breaux nor Hart owned the Bobcat, and it was not registered to either of them under any motor vehicle registration law.

According to the record, Kevin Rogeau ("Rogeau"), the general superintendent at Hart, took the Bobcat home on Friday, August 2, 2002, to cut down a pine tree on his property. Although the lease agreement bears a termination date of August 2, 2002, NationsRent did not regain possession of the Bobcat until August 6, 2002. Rogeau had requested and received permission from NationsRent to take the Bobcat "off-rent" for use at his residence over the weekend. As a result, Hart was charged for renting the Bobcat only through August 2, 2002. When Breaux learned that Rogeau was using the Bobcat to cut down a tree, he volunteered to take the pine tree to his property and cut it up for lumber. According to Rogeau, Breaux inquired if he could take the Bobcat with him to unload the tree and use it the remainder of the weekend. After Rogeau

gave his permission, Breaux picked up the Bobcat from Rogeau and transported it to his residence in Sour Lake on Saturday, August 3, 2002. In his affidavit, Ira Hart ("Mr.Hart"), the president of Hart, stated, however, that "[n]either myself nor Hart Construction, Inc. were aware that Mr. Breaux intended to use the Bobcat for his own personal reasons on Saturday, August 03, 2002."

When Breaux arrived at his residence, the decedent, K.S. Y., who lived with his parents in Nederland, Texas, was a guest of Breaux's household. Breaux began operating the Bobcat in his backyard to "pil[e] brush up." He admits that the work he was performing was purely personal in nature and had nothing to do with Hart's business. At deposition, Breaux testified that he used the Bobcat from thirty minutes to one hour before the incident occurred. At that time, according to the Youngs' Fourth Amended Original Petition, Breaux "backed the Bobcat over the Deceased, proximately causing the Deceased to sustain grave physical harm, and which subsequently caused the death of the Deceased." Consequently, the Youngs filed suit against Breaux, NationsRent, and Hart in the 136th Judicial District Court of Jefferson County, Texas, on September 5, 2002, alleging claims of negligence.

At the time of the accident, Hart maintained commercial general liability insurance coverage through NAICO under policy number MP1956642H ("the Policy"), with a policy period of August 15, 2001, to August 15, 2002. Breaux is not a named insured on the Policy. NAICO is a corporation organized and existing under the laws of the State of Oklahoma, which has its principal place of business in Lincoln County, Oklahoma. Throughout the proceedings in the Underlying Lawsuit, NAICO has been providing a defense to Breaux as an employee of Hart, the insured.

On November 14, 2003, NAICO filed its Original Complaint for Declaratory Judgment in federal court based on diversity jurisdiction. NAICO claims that "[a] dispute between the parties has arisen regarding whether the policy of insurance provides coverage to Breaux for the allegations against him in the Underlying Lawsuit and whether NAICO has any duty to defend him in the Underlying Lawsuit and a duty to indemnify as a result of any judgment and/or settlement." NAICO argues that the Policy covers only those who qualify as "an insured." Although Breaux is not a named insured, the Policy provides coverage for employees of the insured, but "only for acts within the scope of their employment by the named insured or while performing duties related to the conduct of the named insured's business." NAICO contends that neither the allegations nor the facts in the Underlying Lawsuit establish that Breaux was acting in such a capacity as to warrant coverage as an employee of Hart.

On February 27, 2004, the Youngs filed their First Amended Third Party Complaint against NAICO, Breaux, and Travelers Property Casualty Company ("Travelers"), alleging "that the underlying negligence was caused by Norman Breaux's negligent operation of a piece of 'mobile equipment.'" The Youngs claim that the Policy's "mobile equipment" clause provides coverage for liability stemming from the operation of such equipment. Travelers was dismissed as a party on March 8, 2004, leaving NAICO and Breaux as third-party defendants. Hence, the Youngs' Third Party Complaint against NAICO is, in effect, a counterclaim. On October 15, 2004, NAICO filed its Motion for Summary Judgment seeking entry of a declaratory

judgment that the Policy provides no coverage and that it has no duty to defend and/or indemnify Breaux as a result of the allegations asserted against him in the Underlying Lawsuit. On October 18, 2004, the Youngs filed their Motion for Summary Judgment seeking dismissal from the instant lawsuit, asserting that they are improper parties absent the rendition of a judgment in the state court action.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Explora-*tion Co. v. Sphere Drake Ins. PLC, 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving parties, however, need not negate the elements of the nonmovants' case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000); *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or

resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996); *see Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir.2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir.2002); *Harken Exploration Co.*, 261 F.3d at 471.

Nevertheless, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.' " *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving parties'] theory is ... senseless, no reasonable jury could find in [their] favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovants' burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.),

*cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir.2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving part[ies'] case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

B. *Interpretation of Insurance Policies*

 "Insurance policies are contracts." *Harken Exploration Co.*, 261 F.3d at 471 n. 3 (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995)); *see Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). As with other contracts, a federal court, sitting in diversity in Texas, applies Texas law in the interpretation of insurance policies. *See Harken Exploration Co.*, 261 F.3d at 471 n. 3 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *H.E. Butt Grocery Co. v. National*

*Union Fire Ins. Co.,* 150 F.3d 526, 529 (5th Cir.1998); *see also Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). Under Texas law, the interpretation of insurance policies is governed by the same rules that apply to the interpretation of other contracts. *See Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.,* 322 F.3d 847, 853 (5th Cir.2003); *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.,* 283 F.3d 709, 713 (5th Cir.2002); *Schneider Nat'l Transp. v. Ford Motor Co.,* 280 F.3d 532, 537 (5th Cir.2002); *Mid–Continent Cas. Co. v. Swift Energy Co.,* 206 F.3d 487, 491 (5th Cir.2000); *Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 740–41 (Tex.1998); *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex. 1997). " 'The interpretation of an insurance policy is a question of law.' " *Centrum GS Ltd.,* 283 F.3d at 713 (quoting *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996)); *see Performance Autoplex II Ltd.,* 322 F.3d at 853.

 When construing the provisions of a policy, the insurance contract is considered as a whole, with each part to be given effect, in order to ascertain the true intent of the parties. *See Utica Nat'l Ins. Co. v. American Indem. Co.,* 141 S.W.3d 198, 201 (Tex.2004); *Balandran,* 972 S.W.2d at 741; *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994); *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex.1965). Hence, "every sentence, clause, and word" in an insurance policy must be given meaning, "to avoid rendering any portion inoperative." *Balandran,* 972 S.W.2d at 741. Specific provisions in the policy control over general statements of coverage. *See Forbau,* 876 S.W.2d at 133; *see also* 3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS §§ 545–54 (1960). Similarly, "[e]ndorsements control over conflicting general policy language." *Westchester Fire Ins. v. Heddington Ins. Ltd.,* 883 F.Supp. 158, 165 (S.D.Tex.1995), *aff'd,* 84

F.3d 432 (5th Cir.1996) (citing *Mutual Life Ins. Co. v. Daddy$ Money, Inc.,* 646 S.W.2d 255, 259 (Tex.App.—Dallas 1982, writ ref'd n.r.e.)). The terms used in an insurance contract are given their ordinary and generally accepted meaning, unless the policy shows the words were meant in a technical or different sense. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.,* 99 F.3d 695, 700 (5th Cir. 1996); *Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979); *Tri County Serv. Co. v. Nationwide Mut. Ins. Co.,* 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied).

 If an insurance policy is ambiguous and is susceptible to more than one reasonable interpretation, under the "contra-insurer rule," it will be construed in favor of the insured. *See American States Ins. Co. v. Bailey,* 133 F.3d 363, 369 (5th Cir.1998); *State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex.1998); *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). This rule of construction does not apply, however, when the insurance contract is expressed in plain and unambiguous language and is susceptible to only one reasonable interpretation. *See Bailey,* 133 F.3d at 369; *Canutillo Indep. Sch. Dist.,* 99 F.3d at 701; *Constitution State Ins. Co. v. Iso–Tex Inc.,* 61 F.3d 405, 407 (5th Cir.1995); *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). The determination of whether an insurance policy is ambiguous is a question of law for the court to decide. *See Canutillo Indep. Sch. Dist.,* 99 F.3d at 700; *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex.2000) (citing *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980)).

 "When there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Puckett v.*

*United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). If an insurance policy "is worded so that it can be given only one reasonable construction, it will be enforced as written." *Iso–Tex Inc.*, 61 F.3d at 407 (citing *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex.1993)); accord *National Union Fire Ins. Co. v. CNA Ins. Cos.*, 28 F.3d 29, 32 (5th Cir.1994), *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). "When the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms." *Id.; see Reed*, 873 S.W.2d at 699. Thus, after considering the rules of contract interpretation, summary judgment is often appropriate in cases where unambiguous language is at issue. *See Tri County Serv. Co.*, 873 S.W.2d at 721 (citing *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 617 (Tex.App.—Dallas 1991, no writ)).

 The insured initially has the burden to plead and prove that the benefits sought are covered by the insurance policy at issue. *See Harken Exploration Co.*, 261 F.3d at 471; *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 722 (5th Cir.1999); *Western Alliance Ins. Co. v. Northern Ins. Co.*, 176 F.3d 825, 831 (5th Cir.1999); *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998); *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir.1997). The insurer, however, bears the burden of establishing that one of the policy's limitations or exclusions constitutes an avoidance or affirmative defense to coverage. *See Harken Exploration Co.*, 261 F.3d at 471; *Federated Mut. Ins. Co.*, 197 F.3d at 722; *Vic Mfg. Co.*, 143 F.3d at 193; *Bailey*, 133 F.3d at 364; *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701; *Utica Nat'l Ins. Co.*, 141 S.W.3d at 203. The Texas Insurance Code provides:

In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense.

Tex. Ins. Code Ann. art. 21.58(b) (West 2004). Once the insurer demonstrates that an exclusion arguably applies, the burden then shifts back to the insured to show that the claim does not fall within the exclusion or that it comes within an exception to the exclusion. *See Harken Exploration Co.*, 261 F.3d at 471; *Federated Mut. Ins. Co.*, 197 F.3d at 723; *Vic Mfg. Co.*, 143 F.3d at 193; *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507–08 (Tex.App.—San Antonio 1994, writ denied); *Britt v. Cambridge Mut. Ins. Co.*, 717 S.W.2d 476, 482 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

 "Under Texas law, the maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured." *Lubbock County Hosp. Dist. v. National Union Fire Ins. Co.*, 143 F.3d 239, 242 (5th Cir.1998) (citing *National Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir.1990)); accord *Centrum GS Ltd.*, 283 F.3d at 713; *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 769 (5th Cir.1999); *Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773, 781 (Tex.App.—Corpus Christi 2002, no pet.). " 'If multiple interpretations [of the policy] are reasonable, [the court] must construe the [policy] against the insurer.' " *Harken Exploration Co.*, 261 F.3d at 475 (quoting *St. Paul Fire & Marine Ins. v. Green Tree Corp.*, 249 F.3d 389, 392 (5th Cir.2001)). The policy of construing language in an insurance policy strictly against the insurer and in favor of the insured is "especially strong when the

court is dealing with exceptions and words of limitation." *Blaylock v. American Guarantee Bank Liab. Ins. Co.,* 632 S.W.2d 719, 721 (Tex.1982); *see Centrum GS Ltd.,* 283 F.3d at 713; *State Farm Fire & Cas. Ins. Co. v. Keegan,* 209 F.3d 767, 769 (5th Cir.2000); *Travelers Indem. Co.,* 166 F.3d at 769; *Bailey,* 133 F.3d at 369; *Canutillo Indep. Sch. Dist.,* 99 F.3d at 701; *Hudson Energy Co.,* 811 S.W.2d at 555. In fact, unlike a coverage clause, when the interpretation of an exclusionary clause is at issue, courts will adopt the insured's construction of an insurance policy exclusion, whenever it is reasonable, even when "'the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Balandran,* 972 S.W.2d at 741 (quoting *Hudson Energy Co.,* 811 S.W.2d at 555); *accord Utica Nat'l Ins. Co.,* 141 S.W.3d at 202.

It is against this legal backdrop that the court must determine whether NAICO has a duty to defend and/or indemnify Breaux, as an employee of Hart, against the Youngs' claims asserted in the state court action.

### C. *Duty to Defend*

■■■■ An insurer has a duty to defend a policyholder in actions brought by a third party who asserts claims potentially covered by the insurance policy. *See Centrum GS Ltd.,* 283 F.3d at 712; *Harken Exploration Co.,* 261 F.3d at 471; *Gulf States Ins. Co. v. Alamo Carriage Serv.,* 22 F.3d 88, 90 (5th Cir.1994); *Utica Nat'l Ins. Co.,* 141 S.W.3d at 201; *Cowan,* 945 S.W.2d at 821; *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). In Texas, when determining an insurer's duty to defend an insured, the court follows the "eight corners" or "complaint allegation" rule. *See Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 528 (5th Cir.2004); *Centrum GS Ltd.,* 283 F.3d at

713; *Vic Mfg. Co.,* 143 F.3d at 193; *Bailey,* 133 F.3d at 369; *Lafarge Corp. v. Hartford Cas. Ins. Co.,* 61 F.3d 389, 393 (5th Cir. 1995); *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141. Under this rule, an insurer's duty to defend is determined by examining "the allegations in the 'most recent petition and the language of the insurance policy." *Harken Exploration Co.,* 261 F.3d at 471; *see Northfield Ins. Co.,* 363 F.3d at 528 (citing *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002)); *Centrum GS Ltd.,* 283 F.3d at 713; *Bailey,* 133 F.3d at 369; *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141. "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *Centrum GS Ltd.,* 283 F.3d at 713; *see Northfield Ins. Co.,* 363 F.3d at 528; *Utica Nat'l Ins. Co.,* 141 S.W.3d at 201; *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141. If the complaint is unclear or ambiguous, or there is doubt whether an allegation states a cause of action within the coverage of a liability policy, the complaint is construed liberally in favor of the insured, and any doubt is resolved in favor of potential coverage. *See Northfield Ins. Co.,* 363 F.3d at 528; *Harken Exploration Co.,* 261 F.3d at 471.

■■■■ "'In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'" *Bailey,* 133 F.3d at 369 (quoting *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141); *see Northfield Ins. Co.,* 363 F.3d at 528; *accord Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). The court must ascertain whether the facts, as alleged, fall within the policy's coverage. *See Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d 153, 155 (Tex.App.—Houston [1st

Dist.] 1990, writ denied). In making this assessment, the court may not consider the truth or falsity of the allegations in the underlying pleadings. *See Vic Mfg. Co.,* 143 F.3d at 193; *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1492 (5th Cir.1992); *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). Instead, all the facts alleged in the third party's complaint are assumed to be true. *See Centrum GS Ltd.,* 283 F.3d at 713; *Houston Petroleum Co.,* 830 S.W.2d at 155. Moreover, the insurance company's duty to defend is not affected by extrinsic evidence, including facts learned before, during, or after the suit. *See American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 154 (Tex.App.—Dallas 1990, writ dism'd). Even if the allegations in the third party's complaint are known or discovered to be untrue, an insurer that has contracted to defend must do so. *See Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex. 1965).

■■■ The duty to defend does not arise, however, until a complaint alleging a potentially covered claim is tendered to the insurer. *See Lafarge Corp.,* 61 F.3d at 400 (citing *Members Ins. Co. v. Branscum,* 803 S.W.2d 462, 466–67 (Tex.App.—Dallas 1991, no writ)). The most recently amended complaint provided to the insurer is examined to ascertain the existence of such duty. *See Northfield Ins. Co.,* 363 F.3d at 528; *Harken Exploration Co.,* 261 F.3d at 471; *Vic Mfg. Co.,* 143 F.3d at 194; *Canutillo Indep. Sch. Dist.,* 99 F.3d at 701. An insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the scope of the policy. *See Northfield Ins. Co.,* 363 F.3d at 528; *Lafarge Corp.,* 61 F.3d at 393; *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983). "If the complaint alleges multiple claims or claims in the alternative, some of which fall within the coverage of the policy and some of which do not,

the duty to defend arises if at least one of the claims is facially within the policy's coverage." *Lafarge Corp.,* 61 F.3d at 393; *see Federated Mut. Ins. Co.,* 197 F.3d at 726. " 'If coverage exists for any portion of a suit, the insurer must defend the insured in the entire suit.' " *Centrum GS Ltd.,* 283 F.3d at 714 (quoting *St. Paul Fire & Marine Ins. Co.,* 249 F.3d at 391); *accord Harken Exploration Co.,* 261 F.3d at 474.

■■■ If a plaintiff's complaint does not allege facts within the scope of policy coverage, an insurer has no legal obligation to defend the insured against the plaintiff's claims. *See Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141; *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982). An insurer also does not have a duty to defend when the complaint makes allegations which, if proven, would place the plaintiff's claim within an exclusion from coverage. *See Gulf States Ins. Co.,* 22 F.3d at 90; *Puckett,* 678 S.W.2d at 938; *McManus,* 633 S.W.2d at 788; *Holmes v. Employers Cas. Co.,* 699 S.W.2d 339, 340 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The insurer is entitled to rely on the plaintiff's allegations in determining whether the facts are within the coverage of the policy. *See McManus,* 633 S.W.2d at 788. While the plaintiff's allegations are to be construed liberally, if the complaint alleges only facts that are not within the scope of policy coverage or that are excluded by the terms of the policy, the insurer is not required to defend. *See Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141; *Garcia,* 876 S.W.2d at 848; *McManus,* 633 S.W.2d at 788.

### D. *Duty to Indemnify*

■■■ "In Texas, the duty to defend and duty to indemnify are distinct and

separate duties creating distinct and separate causes of action." *American Alliance Ins. Co.,* 788 S.W.2d at 153–54; *accord Utica Nat'l Ins. Co.,* 141 S.W.3d at 203; *King,* 85 S.W.3d at 187; *Griffin,* 955 S.W.2d at 82; *Cowan,* 945 S.W.2d at 821–22; *Maupin,* 500 S.W.2d at 635–36. "Even if a liability insurer breaches its duty to defend, the party seeking indemnity still bears the burden of proving coverage if the insurer contests it." *Utica Nat'l Ins. Co.,* 141 S.W.3d at 203. In contrast to the duty to defend, the duty to indemnify is not triggered by alleged facts asserted by a third party, but, rather, by actual, proven facts that underlie the dispute and result in liability. *See Medical Care Am., Inc. v. National Union Fire Ins. Co.,* 341 F.3d 415, 424 (5th Cir.2003); *Canutillo Indep. Sch. Dist.,* 99 F.3d at 701; *Cowan,* 945 S.W.2d at 821; *Pilgrim Enters., Inc. v. Maryland Cas. Co.,* 24 S.W.3d 488, 492 (Tex.App.—Houston [1st Dist.] 2000, no pet.). In fact, "[a]n insurer is not obligated to pay a liability claim until [the] insured has been adjudicated to be legally responsible." *Southern County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 460 (Tex. App.—Corpus Christi 2000, no pet.). Moreover, an insurer has no duty to indemnify its insured when found liable if the policy at issue does not provide coverage for the claims made against the insured. *See Western Heritage Ins. Co. v. River Entm't,* 998 F.2d 311, 315 (5th Cir. 1993); *see also S.S. v. State Farm Fire & Cas. Co.,* 808 S.W.2d 668, 671–72 (Tex. App.—Austin 1991), *aff'd,* 858 S.W.2d 374 (Tex.1993); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ).

■ "The duty to defend is ... broader than the duty to indemnify." *E & L Chipping Co. v. Hanover Ins. Co.,* 962 S.W.2d 272, 274 (Tex.App.—Beaumont 1998, no writ); *see Northfield Ins. Co.,* 363 F.3d at 528. Even where an insurer is obligated to defend, it will not be required to indemnify an insured for losses that fall outside the scope of the policy. *See State Farm Fire & Cas. Co. v. Brooks,* 43 F.Supp.2d 695, 698 (E.D.Tex.1998). Where there is no duty to defend, and no facts which could be developed at the trial of the underlying lawsuit to impose coverage, the insurer's duty to indemnify may be determined on summary judgment. *See Griffin,* 955 S.W.2d at 83. The same factors that negate an insurer's duty to defend an insured also negate any duty to indemnify. *See id.* at 84. Thus, while the duty to defend is broader than the duty to indemnify, the insurer owes neither duty to an insured when the types of claims made are specifically excluded from policy coverage. *See Western Heritage Ins. Co.,* 998 F.2d at 315; *see generally Lafarge Corp.,* 61 F.3d at 393 (citing *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993)).

■ In Texas, until recently, the courts were said to lack jurisdiction to entertain a declaratory judgment action regarding an insurer's duty to indemnify its insured for damages that could be assessed in a pending lawsuit, as any such determination was deemed to be dependent on a contingency and "purely advisory in nature." *Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 332 (Tex.1968); *see Granite Constr. Co., Inc. v. Bituminous Ins. Cos.,* 832 S.W.2d 427, 429 (Tex.App.—Amarillo 1992, no writ). The Texas Supreme Court retreated from this position in *Griffin,* holding that "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." 955 S.W.2d at 84 (citing *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696,

714 (Tex.1996)); *see Northfield Ins. Co.,* 363 F.3d at 529; *Western Alliance Ins. Co.,* 176 F.3d at 828; *Nutmeg Ins. Co. v. Clear Lake City Water Auth.,* 229 F.Supp.2d 668, 676 (S.D.Tex.2002). As a consequence, "parties may secure a declaratory judgment on the insurer's duty to indemnify before the underlying tort suit proceeds to judgment." *Griffin,* 955 S.W.2d at 83; *see Western Alliance Ins. Co.,* 176 F.3d at 828; *Nutmeg Ins. Co.,* 229 F.Supp.2d at 676 (citing *Bailey,* 133 F.3d at 368).

### E. *Interpretation of the Policy*

### 1. *Provisions of the Policy*

NAICO argues that it has no duty to defend and/or indemnify Breaux in the Underlying Lawsuit because Breaux is not an insured under the Policy. Section I of the Policy, entitled "Coverages," defines the insurance agreement between NAICO and the named insured, Hart, stating:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Section II of the Policy provides in part:

**SECTION II WHO IS AN INSURED**

&ast; &ast; &ast; &ast; &ast; &ast;

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

&ast; &ast; &ast; &ast; &ast; &ast;

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

■■■ While the Youngs allege that the "mobile equipment" provision of the Policy provides coverage to Breaux for negligently operating the Bobcat, the uncontroverted evidence establishes that such provision does not apply. In response to NAICO's motion for summary judgment, Breaux does not dispute that the Bobcat was not being operated along a public highway at the time of the incident and that it was not registered to Hart under any motor vehicle registration law. In their responses to NAICO's request for admissions, Breaux and the Youngs admit that, at the time of the incident, "the Bobcat was not being driven along a public highway," that Hart "did not own the Bobcat," and that "the Bobcat was not registered to Hart Construction, Inc. under any motor vehicle registration law." Thus, the uncontested evidence in the record, in conjunction with the clear and unambiguous language of the

Policy, preclude coverage under the "mobile equipment" provision.

NAICO also claims that Breaux never had "possession of the Bobcat with the authorization of Hart Construction, Inc." Mr. Hart submitted an affidavit stating that Breaux did not have authorization from Hart to use the Bobcat. At deposition, Mr. Hart testified that although Rogeau had previously borrowed company equipment, Rogeau did not have permission from him or the company to remove the leased Bobcat from the work site or to permit Breaux to take it home for personal use. Mr. Hart further stated that Hart did not have an ownership interest in or any assigned projects at the location where Breaux operated the Bobcat. In addition, according to Mr. Hart, "Mr. Breaux's operation of the Bobcat was outside the course and scope of his employment," and neither Hart nor Breaux was compensated for the time he spent operating the Bobcat. Lastly, Mr. Hart testified that he was not aware that Breaux intended to use the Bobcat for his personal use and therefore, "could not reasonably anticipate that an injury would result as a natural and probable consequence of the unauthorized entrustment."

Breaux contends, however, that he is included within the scope of the Policy's coverage. He alleges that "[w]hile it is clear that the work performed by [him] at the time of the incident was not in the course and scope of Hart Construction, Inc.'s business, it is equally clear that Mr. Breaux was performing duties relating to the conduct of Hart Construction's business." Breaux asserts that he performed duties relating to the conduct of Hart's business by "maintaining, safeguarding and protecting the Bobcat which had been leased" by Hart. Breaux contends that because the Bobcat was still under a rental agreement at the time of the incident, Hart had the duty to care for the Bobcat until it was picked up by NationsRent. Thus, according to Breaux, because he was an employee of Hart and used the Bobcat with the permission of Rogeau, the duty and responsibility to "safeguard, maintain and protect the Bobcat" was imposed on him and was related to the conduct of Hart's business.

Section II of the Policy extends coverage to Breaux as an employee of Hart, but only to the extent he was performing "acts within the scope of [his] employment by [Hart] or while performing duties related to the conduct of [Hart's] business." Because Breaux concedes that "the Bobcat is not a piece of mobile equipment" for purposes of coverage and that he was not acting within the scope of his employment, the sole issue before the court is whether Breaux was performing duties related to the conduct of Hart's business at the time of the incident.

### 2. Duties Related to the Conduct of the Business

■ Breaux argues that because the phrase "conduct of your business" is not specifically defined in the Policy, and, given that insurance policies are to be strictly construed in favor of the insured, his responsibility to "maintain, safeguard and protect the Bobcat for which Hart is ultimately responsible" was related to the conduct of Hart's business. NAICO maintains that there is no evidence that "Breaux's operation of the Bobcat had any relationship to the conduct of Hart Construction, Inc.'s business ...." Thus, the primary issue is whether the Policy's lack of an express definition of "conduct of your business" creates an ambiguity. See *Transcontinental Ins. Co. v. Edwards,* Civil No. 96–5099, 1996 WL 814532, at *6 (W.D.Ark. Dec.23, 1996), *aff'd,* 139 F.3d 1185 (8th Cir.1998). In Texas, "the lack of a definition of a term in a policy does not

create an ambiguity if the term can still be given a certain, definite meaning." *Associated Freezers, Inc. v. Fireman's Fund Ins. Co.*, No. 01–95–00699–CV, 1996 WL 12061, at * 2 (Tex.App.—Houston [1st Dist.] Jan.11, 1996, writ denied) (not designated for publication) (citing *United Serv. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 779 (Tex.App.—San Antonio 1991, writ denied)).

The phrase "conduct of your business" does not lack meaning simply because it is not expressly defined in the Policy. *See Edwards*, 1996 WL 814532, at *6. In accordance with Texas contract law, the terms of the Policy are given their ordinary and generally accepted meaning, unless the Policy shows the words were meant in a technical or different sense. *See Canutillo Indep. Sch. Dist.*, 99 F.3d at 700. Though there is little precedent in Texas defining the phrase "conduct of your business," the United States Court of Appeals for the Fifth Circuit has considered whether an insurance contract which insured "only with respect to the conduct of his business" extended coverage to an insured's shooting of another individual for personal reasons, which occurred on business property during working hours. *See Travelers Indemnity Co. v. Nix*, 644 F.2d 1130, 1131 (5th Cir.1981); *see also Edwards*, 1996 WL 814532, at *6. In holding that such facts did not warrant coverage under the policy, the Fifth Circuit stated:

> It is quite apparent to us that the parties in contracting for this insurance policy did not contemplate anything other than what the policy plainly intends: coverage for liability arising out of the conduct of the business, or incidental to the business .... The policy does not provide coverage for personal liability arising from personal matters and cannot be extended to provide coverage for such liability.

*Nix*, 644 F.2d at 1132. The court concluded that there was no ambiguity in the policy, and, as such, the plain meaning of the policy controlled, foreclosing coverage of the shooting. *See id.; see also Society Ins. v. Linehan*, 238 Wis.2d 359, 616 N.W.2d 918, 920 (Ct.App.2000).

In *Edwards*, the issue before the Arkansas court was whether an insured's intentional acts were excluded from coverage because they were not performed with respect to the conduct of the insured's business. In that case, the insured was a defendant in a lawsuit alleging causes of action for outrage, assault and battery, false imprisonment, and loss of consortium stemming from his kidnaping of an attorney he suspected of having an affair with his wife. The attorney sued Edwards's business, which was covered by a commercial general liability insurance policy, in state court under the doctrine of *respondeat superior*. The court held, following *Nix*, that the phrase "conduct of a business" in the policy did not apply to personal liability arising from personal matters and that insurance coverage did not extend to Edwards's actions. *See Edwards*, 1996 WL 814532, at *6.

It is apparent that NAICO and Hart, in contracting for the Policy, did not consider anything other than what the Policy plainly contemplates, that is, coverage for liability arising from the acts of employees while performing duties related to the conduct of Hart's business or incidental to Hart's business. *See Nix*, 644 F.2d at 1132. Breaux's actions do not fall within the express terms of the Policy. *See id.* The Policy manifestly does not cover and cannot be interpreted liberally to provide coverage for Breaux's actions, unauthorized by Hart, of using the Bobcat to clear brush on his personal property. *See id.* "It is clear that this business policy insures only against liability arising out of, or inci-

dental to, the conduct of the business of [Hart]." *Id.* Even if, as Breaux contends, he had a duty "to maintain, safeguard and protect the Bobcat," he was not performing such duty when he utilized it off the work site on his own real property for his own personal benefit, without the knowledge or consent of the insured. In short, Breaux's construction and attempted application of the Policy to provide coverage under these circumstances is unreasonable.

This court finds the reasoning of the Fifth Circuit in *Nix* to be persuasive and interprets the Policy in this case not to extend coverage to Breaux's personal liability for purely personal pursuits. *See Nix,* 644 F.2d at 1132; *Edwards,* 1996 WL 814532, at *6. The facts of this case show, as a matter of law, that the liability, if any, of Breaux arises from a strictly personal and voluntary transaction, which was unforeseen and unrelated to the covered business of Hart. *See Nix,* 644 F.2d at 1132. The incidental nexus between Breaux's use of a company-leased Bobcat for a non-business purpose on non-business property does not render Breaux's activity one related to "the conduct of a business." *See Sentry Ins. Co. v. Sahlberg,* No. CA935331E, 1995 WL 809951, at *3 (Mass.Super.Ct. Mar. 28, 1995); *cf. American Guarantee & Liab. Ins. Co. v. The 1906 Co.,* 273 F.3d 605, 616–17 (5th Cir.2001) (applying Mississippi law, the court held that injury to models, who were surreptitiously videotaped in a dressing room at a photography studio, owned and operated as a wholly-owned division of the insured, was covered by a liability policy for actions "arising out of the conduct of" the insured's business.) Evaluating the Policy as a whole, with each part given effect, and finding no ambiguity, "the court is unable to construe the phrase 'conduct of [your] business' to include [Breaux's] behavior." *Edwards,* 1996 WL 814532, at *6. Thus, the Policy does not provide cov-

erage for Breaux's actions that form the basis of the Underlying Lawsuit.

### 3. *NAICO's Duties to Defend and Indemnify*

Applying the "eight corners" or "complaint allegation" rule, the allegations against Breaux in the Youngs' most recent petition in the state court action, if taken as true, and read in conjunction with the language of the Policy, do not state a cause of action within the scope of the Policy. *See Northfield Ins. Co.,* 363 F.3d at 528. Therefore, NAICO has no duty to defend Breaux in the Underlying Lawsuit because, at the time of the incident giving rise to the Youngs' claims, Breaux was not a covered employee under the Policy. In addition, the duty to indemnify, while separate and distinct from the duty to defend, is justiciable before trial of the Underlying Lawsuit because the same reasons that negate NAICO's duty to defend Breaux negate any possibility that NAICO will have a duty to indemnify him for any adverse judgment. *See Griffin,* 955 S.W.2d at 84. Because the facts in the Underlying Lawsuit are insufficient to invoke the duty to defend, then proof of those facts will not give rise to NAICO's duty to indemnify. *See Founders Commercial, Ltd. v. Trinity Universal Ins. Co.,* —— S.W.3d ——, No. 01–03–01063-CV, 2004 WL 2677097, at *6 (Tex.App.—Houston [1st Dist.] Nov.24, 2004, no pet. h.). Thus, NAICO has no duty to indemnify Breaux for any judgment obtained against him in the Underlying Lawsuit.

### F. *The Youngs' Motion for Summary Judgment*

In their Motion for Summary Judgment, the Youngs claim they have no privity of contract with NAICO and should not be joined as parties to the instant lawsuit regarding insurance coverage. The

Youngs argue that, in the absence of a judgment in the Underlying Lawsuit, there is no justiciable controversy involving the Youngs and NAICO "that would allow them to be made proper parties to the litigation before this Court." As discussed above, it is now settled in Texas that a justiciable controversy exists such that an insurer's duty to indemnify an insured may be determined before a judgment is obtained in the underlying lawsuit. *See Griffin*, 955 S.W.2d at 84; *accord Northfield Ins. Co.*, 363 F.3d at 529; *Western Alliance Ins. Co.*, 176 F.3d at 828; *Nutmeg Ins. Co.*, 229 F.Supp.2d at 676.

NAICO brings this declaratory judgment action pursuant to the federal and the Texas Declaratory Judgment Acts. The federal Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (2004). "The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or breach of some contractual duty." *Chevron U.S.A, Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir.1993) (quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir.1949)); *see also United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.2000); *Serco Servs. Co. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed.Cir.1995); *Presbytery of N.J. v. Florio*, 40 F.3d 1454, 1464 (3d Cir.1994). The Act allows " 'relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked.' " *Textron Lycoming Reciprocating Engine Div. v. United Auto., Aerospace & Agric. Implement Workers of Am. Int'l Union*, 523 U.S. 653, 660 n. 3, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). The Texas Declaratory Judgment Act states in part:

> When declaratory relief is sought, all persons who have or claim any interest which would be affected by the declaration must be made parties. A declaration does not prejudice the rights of persons who are not parties to the proceeding.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a) (West 2004).

In Texas, a party injured by an insured is viewed as a third-party beneficiary of a liability insurance policy. *See State Farm County Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex.1989); *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex.1969); *see also Balog v. State Farm Lloyds*, No. 08–00–00324–CV, 2001 WL 997412, at *3 (Tex.App.—El Paso Aug.30, 2001, no pet.) (not designated for publication). The injured party, however, may not proceed directly against the insurer until it has been established by judgment or agreement that the insured has a legal obligation to pay damages to the injured party. *See Ollis*, 768 S.W.2d at 723; *Murray*, 437 S.W.2d at 265; *Balog*, 2001 WL 997412, at *3; *accord State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 384 (5th Cir.1997). Nevertheless, under Texas law, a declaratory judgment action brought by an insurer is binding upon a third-party beneficiary to a liability insurance policy if properly joined as a party to such action. *See Fullerton*, 118 F.3d at 385 n. 6; *Balog*, 2001 WL 997412, at *3. In *Balog*, the Texas Court of Appeals held

that, without regard to privity, the trial court's determination that the insurer had no duty to indemnify the insured was binding upon the injured party, who had been joined as a party to the insurer's declaratory judgment action. *See id.* (distinguishing *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 774–75 (Tex. 1983)).

 "[P]rivity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971); *accord Cabello v. Northwestern Nat'l Ins. Group,* No. 08–99–00281–CV, 2000 WL 1514095, at *4 (Tex.App.—El Paso Oct.12, 2000, no pet.) (not designated for publication). In this instance, because the Youngs derive their right, if any, to collect insurance proceeds directly from the rights of Breaux, they are deemed to be in privity by virtue of their shared legal interest. *See Fullerton,* 118 F.3d at 385 (citing *Aetna Cas. & Sur. Co. v. Jones,* 220 Conn. 285, 596 A.2d 414, 421, 425 (1991)). As such, under the Declaratory Judgment Act, the court may declare NAICO's rights and legal relations with respect to both Breaux and the Youngs. Accordingly, the determination that NAICO has no duty to indemnify Breaux is binding upon the Youngs, as well, due to the derivative nature of their right to recovery. *See Fullerton,* 118 F.3d at 385–86; *Balog,* 2001 WL 997412, at *3. Consequently, the Youngs are proper parties to this lawsuit, precluding summary judgment in their favor.

### III. *Conclusion*

In summary, Breaux, an employee of Hart, is not covered by the Policy issued to Hart by NAICO because Breaux's use of the Bobcat was not within the scope of his employment or related to the conduct of Hart's construction business. Moreover, the Bobcat is not mobile equipment within the terms of the Policy, as it was not registered to Hart and the accident did not occur while it was being driven upon a public highway. Due to the lack of coverage, NAICO has no duty to defend Breaux or indemnify him for any judgment obtained against him in the Underlying Lawsuit. Furthermore, the Youngs are proper parties to this suit, as a justiciable controversy exists between NAICO and the Youngs because NAICO's duty to indemnify can be determined prior to the resolution of the Underlying Lawsuit. The Youngs are bound to this determination by virtue of the derivative nature of their right to recovery. Accordingly, NAICO's Motion for Summary Judgment is GRANTED, and the Youngs' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.